# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBANPREET SINGH,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>　　　　Respondents. | Case No.: 1:25-cv-01752-SKO (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Upon consent of all parties, the case was reassigned to the undersigned for all purposes, including entry of final judgment. (Docs. 4, 6, 7.)

Petitioner filed the instant petition on December 5, 2025. (Doc. 1.) He challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

1

On January 9, 2026, Respondent filed a response to the petition. (Doc. 10.) Petitioner did not file a reply. For the reasons discussed below, the Court will deny the petition.

**I.      BACKGROUND**

Petitioner is a native and citizen of India. (Doc. 10-1 at ¶ 5.) He entered the United States on October 30, 2022, without inspection. (Doc. 10-1 at ¶ 5.) On November 1, 2022, he was served with a Notice to Appear and placed into removal proceedings. (Doc. 10-1 at ¶ 6.) He was then released from custody. (Doc. 10-1 at ¶ 6.)

On December 12, 2024, Petitioner was convicted of violating Cal. Penal Code § 136.1(B)(2), Preventing or Dissuading a Witness from Prosecution, and was sentenced to two years in prison. (Doc. 10-1 at ¶ 8.)

After release from criminal custody, on February 20, 2025, Petitioner was taken into ICE custody. (Doc. 10-1 at ¶ 9.)

Subsequently, on March 10, 2025, April 7, 2025, May 19, 2025, July 8, 2025, July 29, 2025, August 26, 2025, and September 16, 2025, Petitioner appeared in Immigration Court. (Doc. 10-1 at ¶ 10.) Each hearing was continued at Petitioner's request to provide additional documents in support of his relief application. (Doc. 10-1 at ¶¶ 10-12.)

On December 17, 2025, the IJ ordered Petitioner removed to India. (Doc. 10-1 at ¶ 13.) On January 8, 2026, Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). See Executive Office for Immigration Review Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/, (search conducted utilizing Petitioner's alien number).

Respondents contend Petitioner is subject to mandatory detention under Immigration and Nationality Act ("INA") § 235(b) as an "applicant for admission," and § 236(c) due to his aggravated felony conviction.

**II.      DISCUSSION**

A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

2

"[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention under § 1226(c). See Demore v. Kim, 538 U.S. 510, 517 (2003).

B.  Mandatory Detention under 8 U.S.C. § 1226(c)

Petitioner has been detained for approximately 1 year pursuant to 8 U.S.C. § 1226(c), which, in relevant part, provides:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who--

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence1 to a term of imprisonment of at least 1 year,

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or

(E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

. . . .

(4) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating

with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C.A. § 1226 (West).

Petitioner's prior criminal conviction for witness intimidation, in violation of Cal. Penal Code § 136.1, qualifies as an aggravated felony. See Godoy-Aguilar v. Garland, 125 F.4th 985, 989-91 (9th Cir. 2025) (Witness intimidation under Penal Code section 136.1(b)(2) is an aggravated felony under 8 U.S.C. § 1101(a)(43)(S) as an offense relating to obstruction of justice for which the term of imprisonment is at least one year.). Thus, Petitioner is subject to mandatory detention as an aggravated felon pursuant to 8 U.S.C. § 1226(c).

Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)." As noted above, Section 1226(c) states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. (citing 8 U.S.C. § 1226(a)). Further, the Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." Id. at 304 (emphasis in original). Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id. Here, Petitioner does not meet the conditions for release. Therefore, statutorily, § 1226(c) mandates detention. Nevertheless, Petitioner contends that his detention without

4

a bail review hearing has become so unreasonably prolonged as to violate his Fifth Amendment procedural due process rights.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

Petitioner's detention is mandatory under § 1226(c), and he does not meet any of the conditions for release pursuant to § 1226(c)(2).  Nevertheless, Petitioner claims that his detention has become so unreasonably prolonged that due process requires that he be provided an individualized bond hearing.  The Supreme Court has not directly addressed the constitutionality of prolonged detention in the context of an as-applied challenge to 8 U.S.C. § 1226(c); however, the Supreme Court's statutory decisions regarding mandatory detention provide guidance regarding prolonged detention in an as-applied challenge under the Due Process Clause.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. The Court in Zadvydas read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal. Id. at 699. Zadvydas is materially different from the present case.  In Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable." Id. at 690.  The civil confinement at issue was not limited, "but potentially permanent." Id. at 691. The Court observed that where "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." Id. (internal quotation marks and citation omitted).  Zadvydas distinguished § 1231 from § 1226 on these very grounds, noting that "post-removal-period detention, unlike detention pending a

determination of removability, has no obvious termination point." Id. at 697. Here, however, removal is practically attainable. As the Supreme Court noted in Jennings, "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." Jennings, 583 U.S. at 304.

In Demore v. Kim, a lawful permanent resident alien challenged the no-bail provision of the Immigration and Nationality Act ("INA"), complaining that his six-month detention violated due process because he had not been provided an individualized bond hearing. 538 U.S. 510. The Supreme Court rejected this claim, observing first that Congress, in its "broad power over naturalization and immigration proceedings," "regularly makes rules that would be unacceptable if applied to United States citizens." Id. at 521 (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. Id. at 527-28. Also, the Court noted that detention under § 1226(c) has a definite termination point. Id. at 529. Although the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period, it acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases ... and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. Nevertheless, the majority went on to hold that six months did not run afoul of the due process clause in part because the delayed proceedings were the result of the alien's own requests. Id. at 530–31. In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which noted that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

In 2015, the Ninth Circuit applied the canon of constitutional avoidance to hold that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention." Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir.2015). In Jennings v. Rodriguez, however, the Supreme Court determined that the Ninth Circuit had misapplied the doctrine of constitutional avoidance and the "implicit 6-month time limit on the length of mandatory detention" under § 1226(c) fell "far short

of a 'plausible statutory construction.'" 583 U.S. 281, 296, 303-04. The <u>Jennings</u> Court interpreted § 1226(c) as having a "definite termination point" to the length of detention, - the "conclusion of removal proceedings" – and remanded the case to the Ninth Circuit to consider the constitutional arguments on their merits. <u>Id</u>. at 304. <u>Jennings</u> therefore held that § 1226(c) on its face authorized detention without a bond hearing. The Court did not, however, provide guidance on whether an alien could assert a challenge under the Fifth Amendment due process clause as applied to a petitioner in his individual circumstance.

Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, including this Court, have found that unreasonably long detention periods may violate the due process clause. <u>See</u>, <u>e.g.</u>, <u>Rodriguez v. Marin ("Rodriguez IV")</u>, 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); <u>Diop v. ICE/Homeland Sec.</u>, 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); <u>German Santos v. Warden Pike</u>, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing while detained under § 1226(c)); <u>Diep v. Wofford</u>, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); <u>A.E. v. Andrews</u>, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

The Ninth Circuit has also noted that many courts have applied the <u>Mathews</u>[1] test in considering due process challenges in the immigration context. <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of <u>Mathews</u>. <u>See</u>, <u>e.g.</u>, <u>Demore</u>, 538 U.S. at 523, 526–29; <u>see also</u> <u>Dusenbery v. United States</u>, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed <u>Mathews</u> as announcing an all-

---

[1] <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).

7

embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025); Diep, No. 1:24-CV-01238-SKO (HC), 2025 WL 604744; A.E., 1:25-cv-00107-KES-SKO, 2025 WL 1424382.

The Ninth Circuit has also noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court must evaluate Petitioner's private interest. Petitioner has now been detained approximately 1 year. Compared to the six-month presumptive period set forth in Zadvydas beyond which continued detention becomes prolonged, Petitioner's period of detention qualifies as prolonged. Zadvydas, 533 U.S. at 701. In addition, the Ninth Circuit has held that an individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).

In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, it is not sufficient to simply count the months of detention and leave it at that. The process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered."

8

53 F.4th at 1208.  The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." Id. at 1213.

Almost the entire delay was caused by Petitioner. He was detained by ICE on February 20, 2025. From March 10, 2025, through December 17, 2025, the hearings were continued solely at Petitioner's request. In fact, on September 16, 2025, DHS opposed the continuance. (Doc. 10-1 at ¶ 12.) Further, Petitioner was ordered removed to India on December 17, 2025, but Petitioner appealed to the BIA. See id. at 1208 ("We also cannot overlook that most of the period of [petitioner's] detention arose from the fact that he chose to challenge before the BIA and later this Court the IJ's denial of Immigration Relief"); see Prieto-Romero, 534 F.3d at 1063-65 & n.9 (holding that a non-citizen's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order). Furthermore, Petitioner's "private interests are further diminished by the fact that he is subject to an order of removal from the United States." Rodriguez Diaz, 53 F.4th at 1208. In sum, Petitioner's detention of 1 year is longer than the 6-month presumptively reasonable period; however, the delay is due to Petitioner's own actions.  Thus, the first factor weighs in favor of the Government.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor weighs in favor of the Government. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3.  Here, there is no indication that Petitioner has been provided a bond hearing. However, Petitioner was taken into ICE custody immediately after serving his sentence for an aggravated felony. The probable value of a bond hearing is diminished where, as here, the danger to the public is self-evident. Thus, the second factor weighs in favor of the Government.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. Demore, 538 U.S. at 531. In addition, the government has a strong interest in protecting the public. Significantly, here, Petitioner has demonstrated his inability to abide by the law.

9

He was taken into ICE custody immediately after completing his state sentence. Certainly, the Government's interest in protecting the public from an aggravated felon is substantial. Thus, the third factor also weighs in favor of the Government.

While it is true that the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing," Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases), Petitioner has not carried his burden under the Mathews test.  Detention under § 1226(c) is mandatory, the prolonged period of detention is entirely Petitioner's doing, he is subject to an order of removal, and it is apparent he poses a risk of danger to the public if released. The Court concludes that due process does not require Petitioner be provided a bond hearing at this time. The petition will be denied without prejudice to refiling in the future, should detention continue with no reasonable likelihood of removal in the foreseeable future.

**III.     ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED:

1)  The petition for writ of habeas corpus is DENIED without prejudice;

2)  The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated:    **February 20, 2026**                    /s/ _Sheila K. Oberto_
                                                        UNITED STATES MAGISTRATE JUDGE